# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KARLBOM and DONALD PRATKO, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>EDS, AN HP COMPANY; HEWLETT PACKARD COMPANY, a Delaware Corporation; ELECTRONIC DATA SYSTEMS, LLC, a Delaware Limited Liability Entity; ELECTRONIC DATA SYSTEMS CORPORATION, a Texas Corporation, and DOES 1 through 100, Inclusive,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 13cv2996-WQH-DHB<br><br>ORDER |

HAYES, Judge:

　　The matter before the Court is the Motion for Remand filed by Plaintiffs Michael Karlbom and Donald Pratko. (ECF No. 5).

**I.　Background**

　　On March 16, 2009, Plaintiffs filed a "Class Action Complaint for Damages, Restitution, Injunctive and Declaratory Relief" ("Complaint") in San Diego County Superior Court, Case No. 37-2009-00085300-CU-OE-CTL. (Notice of Removal, Ex. 1, ECF No. 1-2). Plaintiffs alleged that certain current and former employees of Defendants were misclassified as exempt from overtime pay, and sought damages for regular overtime (hours in excess of 40 hours a week or 8 hours a day) and double time

1  that they would have earned had they been properly classified.  Plaintiffs alleged that
2  the required amount in controversy under the Class Action Fairness Act of 2005
3  ("CAFA") would not be satisfied.  *Id*. ¶ 7.
4      On April 23, 2009, Defendants filed a Notice of Removal in this Court, S.D. Cal.
5  Case No. 09cv849-LAB(RBB), alleging diversity subject-matter jurisdiction pursuant
6  to CAFA, 28 U.S.C. § 1332(d).  (Notice of Removal, Ex. 3, ECF No. 1-2).
7      On September 17, 2009, the Court issued an Order allowing Defendants
8  "discovery in order to be able to respond to Plaintiffs' challenge regarding the amount
9  in controversy."  *Id*., Ex. 4, ECF No. 1-2 at 121.  The Court also granted Plaintiffs leave
10 to amend the Complaint "to show the total amount they seek to recover."  *Id*. at 122.
11     On November 30, 2009, Plaintiffs filed the "First Amended Class Action
12 Complaint for Damages, Restitution, Injunctive and Declaratory Relief" ("First
13 Amended Complaint"), which is the operative pleading.  *Id*., Ex. 5, ECF No. 1-2.
14 Plaintiffs allege that "the aggregate amount of all class member claim[s] is less than
15 $5,000,000.00."  *Id*. ¶ 7, ECF No. 1-2 at 128.
16     On March 12, 2010, the Court issued an Order remanding this action to state
17 court.  *Id*., Ex. 7, ECF No. 1-2.  The Court stated that "[b]ecause Plaintiffs ... requested
18 relief valued at less than $5 million, ... the [CAFA] amount in controversy [of $5
19 million] was not met on the face of the complaint and Defendants could only show the
20 Court had jurisdiction if they could demonstrate to a legal certainty that the threshold
21 was met, in accordance with *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998
22 (9th Cir. 2007)."  *Id*. at 2, ECF No. 1-2 at 176.  The Court held that Defendants "failed
23 to demonstrate to a legal certainty that the amount Plaintiffs are seeking exceeds $5
24 million."  *Id*. at 10, ECF No. 1-2 at 184.  The docket reflects that Defendants did not
25 appeal the March 12, 2010 Order remanding this action to state court.
26     On March 19, 2013, the United States Supreme Court issued *Standard Fire*
27 *Insurance Co. v. Knowles*, 133 S. Ct. 1345 (2013), which held that in determining
28 whether CAFA's $5,000,000 amount in controversy requirement is satisfied, a district

court must ignore any stipulation by the plaintiff limiting the amount sought, "because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." *Id*. at 1349, 1350. On August 27, 2013, the Court of Appeals for the Ninth Circuit issued an opinion stating that "*Lowdermilk* has been effectively overruled by *Standard Fire*." *Rodriguez v. AT&T Mobility Servs., LLC*, 728 F.3d 975, 982 (9th Cir. 2013).

On December 13, 2013, Defendants again filed a Notice of Removal in this Court, S.D. Cal. Case No. 13cv2996-WQH(DHB), alleging diversity subject-matter jurisdiction pursuant to CAFA, 28 U.S.C. § 1332(d). (ECF No. 1). The Notice of Removal is accompanied by exhibits and the Declaration of Gina Burges, Business Compensation Manager for an affiliate of Defendant Hewlett-Packard Company. Burges asserts that, based upon the allegations of the First Amended Complaint, the discovery responses from Plaintiffs, and the records of Defendants, "adding together all of the potential overtime damages for each putative class member of Plaintiff Class I yields an amount in controversy of over $24,000,000." (Burges Decl. ¶ 23, ECF No. 1-2).

On January 10, 2014, Plaintiffs filed the pending Motion for Remand. (ECF No. 5). On February 4, 2014, Defendants filed a response in opposition to the Motion for Remand. (ECF No. 9). On February 10, 2014, Plaintiffs filed a reply. (ECF No. 11). On April 11, 2014, the Court heard oral argument. (ECF No. 19).

**II.  Contentions of the Parties**

In the Motion for Remand, Plaintiffs contend that remand is appropriate based on the following grounds:

> (1) Defendants' Removal was untimely. The law and facts on which they rely to resurrect their removal rights were available and known to Defendants long ago, and not within the time required by 28 U.S.C. §1446(b)(3);
>
> (2) There is no minimal diversity as of the time of the removal since Electronic Data Systems (EDS) no longer operates and was acquired by Hewlett-Packard (HP) in 2008; HP is a California-based company and is the successor-in-interest to EDS;

> (3) This is a local case or controversy under CAFA as over two-thirds of proposed class members are residents of the State of California and the claims only involve state labor law violations.

(ECF No. 5 at 2). In their reply brief, Plaintiffs contend that "Defendant[s] ha[ve] not provided evidence of a non-speculative amount in controversy sufficient to overcome the presumption against removal." (ECF No. 11 at 6). Plaintiffs contend:

> Burges does not appear to account for the proper statute of limitations periods and makes the ... assumption[] that every pay period there was a violation. That is not what is alleged. What is alleged is that for every pay period that a class member worked but was not paid overtime, those wage statements were inaccurate.... While it is interesting that Defendant[s] would use such a blunt method of calculation – particularly where there are at least some time records available showing how much [overtime] the putative class worked – the method of valuation is not credible and is based on an unjustifiable assumption that all putative class members, if misclassified, worked the same exact amount of overtime as the Plaintiffs.

*Id.* at 8-9.

Defendants contend:

> Plaintiffs' motion for remand is fatally flawed. In arguing that Defendants' removal is not timely, Plaintiffs ignore both the language of the Class Action Fairness Act of 2005 ('CAFA') as well as the federal statute (28 U.S.C. § 1446(b)(3)) authorizing removal of a case that was not initially removable. Defendants clearly did not receive a 'paper' from which they could ascertain that this case was removable until November 15, 2013, after which they timely filed their removal petition. Moreover, Plaintiffs' principal argument that EDS is not a diverse defendant is foreclosed by decades of established precedent from the United States Supreme Court. Plaintiffs also have failed to establish any of the elements of CAFA's local controversy exception. Consequently, Plaintiffs' motion for remand should be denied.

(ECF No. 9 at 6). In the Notice of Removal and the Burges Declaration, Defendants detail the evidence and calculations by which Defendants contend that amount in controversy requirement is satisfied. (Notice of Removal, ECF No. 1 at 10-14; Burges Decl. ¶¶ 3-35, ECF No. 1-2 at 273-80).

**III. Analysis**

    **A.    Standard of Review**

A defendant may remove a civil action from state court to federal court pursuant to the general removal statute, based on either federal question or diversity jurisdiction. *See* 28 U.S.C. § 1441. "The removal statute is strictly construed, and any doubt about

the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airline, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citation omitted). The presumption against removal means that "the defendant always has the burden of establishing that removal is proper." *Id*.

### B. Timeliness of Removal

If an action is not initially removable, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). "[I]nformation relating to the amount in controversy ... in responses to discovery ... shall be treated as an 'other paper' under subsection (b)(3)." 28 U.S.C. § 1446(c)(3)(A). "As a general rule, 'other paper' must be generated within the specific state proceeding which was removed in order to provide grounds for removal under § 1446(b). Discovery documents, briefing and deposition testimony all qualify as 'other paper.'" *Webb Equip. Co., Inc. v. Auto Owners Ins. Co., Inc.*, No. 10-5138-RBL, 2010 WL 1576731, at *3 (W.D. Wash. Apr. 20, 2010) (citations omitted). "[V]irtually every court which has considered the question of what suffices as a removal triggering 'paper' has concluded that the term does not include intervening statutory or case law changes." *Phillips v. Allstate Ins. Co.*, 702 F. Supp. 1466, 1468 (C.D. Cal. 1989); *see also Webb Equip. Co.*, 2010 WL 1576731, at *3 (same, collecting cases).

Defendants contend:

> Of course, Defendants believed at the time they originally removed the case that CAFA's $5 million jurisdictional threshold was met. This Court, however, held in its March 12, 2010 Remand Order that EDS' estimates of the amount in controversy were 'based to a great extent on speculation rather than empirically-verifiable facts or on the complaint itself,' and accordingly remanded the case. Thereafter, the thirty-day clock did not begin to run in this case until receipt by EDS of 'an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.' EDS did not receive such a 'paper' until it was served with Plaintiffs' discovery responses on November 15, 2013.

(ECF No. 9 at 17). Defendants contend that "[i]n Plaintiffs' November 2013 responses,

Plaintiffs alleged for the first time that":

    (1) EDS failed to timely pay *all wages to every individual* in Plaintiffs' 'Waiting Time Subclass';

    (2) EDS provided inaccurate itemized wage statements *to every individual* in Plaintiffs' 'Illegal Records Subclass' for every pay period they worked for Defendants;

    (3) Plaintiffs' 'Illegal Records Subclass' encompassed *all employees* in Plaintiff Classes I, II and III; and

    (4) Putative class members in Plaintiff Classes I, II and III worked *15 to 20 overtime hours* per week without lawful compensation.

This information had never been provided previously in the course of this litigation.

*Id.* (citing Plaintiff Karlbom's Special Interrogatory Answer No. 20; Plaintiff Pratko's Special Interrogatory Answer Nos. 20-22).[1]

---

[1] The question and answer from Plaintiff Karlbom's November 2013 responses cited by Defendants states: "Please define how many hours of overtime per week constitutes 'regularly work overtime' as alleged in Paragraph 20 of your First Amended Class Action Complaint," which was answered, "I reasonably estimate 15 to 20 hours per workweek were in excess of 8 hours per day and/or 40 hours per week." (Wymer Decl., Ex. F, Karlbom Answer No. 20, ECF No. 9-3 at 118-19).

    The first question and answer from Plaintiff Pratko's November 2013 responses cited by Defendants states: "Do you contend that Defendants failed to timely pay all wages due upon termination from employment to every individual who is included in Plaintiffs' proposed Waiting Time Sub-Class," which was answered, "Yes. Plaintiff contends each person who worked overtime hours and who separated from employment during the proposed class period was owed wages." (Wymer Decl., Ex. G, Pratko Answer No. 20, ECF No. 9-3 at 131-32).

    The second question and answer from Plaintiff Pratko's November 2013 responses cited by Defendants states: "Do you contend that Defendants knowingly and intentionally provided inaccurate itemized wage statements to every individual who is included in Plaintiffs' proposed Illegal Records Sub-Class for every pay period during which they worked for Defendants," which was answered, "Yes. Plaintiff contends each person who worked overtime hours and that Defendant failed to properly list all hours actually worked accurately with the corresponding correct measure of pay rate at the overtime rate of pay, generally 1.5x the employees' hourly rate of pay." *Id.*, Pratko Answer No. 21, ECF No. 9-3 at 132-33).

    The final question and answer from Plaintiff Pratko's November 2013 responses cited by Defendants states: "If you contend that any of the individuals included in Plaintiffs' Illegal Records Sub-Class were knowingly and intentionally provided inaccurate wage statements during only some of the pay periods during which they worked for Defendants, please identify those individuals by name and provide an estimate of the number of pay periods during which Defendants knowingly and intentionally provided inaccurate itemized wage statements," which was answered, "Yes. Plaintiff contends all members of the putative class, approximately 421 individuals, were not provided accurate itemized wage statements." *Id.*, Pratko Answer No. 22, ECF No. 9-3 at 133.

Plaintiffs contend that Defendant "had ample information about class size, salaries, and the claims, at least by September 2009." (ECF No. 5-1 at 4). Plaintiffs contend:

> Defendants received interrogatory responses from Plaintiffs in early 2013 showing Plaintiffs worked hours in excess of those entered in Defendants' system, up to approximately 15-20 hours of overtime per week. On June 27-28, 2013, HP took the depositions of Pratko and Karlbom, and again, information needed to value the claims in the lawsuit was provided. HP had all the information it could possibly argue was needed to determine the value of the case no later than July 2013, when the depositions were final. There is no new information in the interrogatory responses served by Plaintiffs in November 2013 that changed the value of the case for removal purposes.

*Id.*[2]

The Notice of Removal is accompanied by exhibits and the Declaration of Gina Burges, Business Compensation Manager for an affiliate of Defendant Hewlett-Packard Company. The Notice of Removal and the Burges Declaration contain calculations of the amount in controversy related to three of Plaintiffs' claims: (1) "an amount in controversy of over $24,000,000 for Plaintiff Class I's overtime claim"; (2) "the total amount in controversy for Plaintiffs' 'Waiting Time Subclass' is $2,197,869.55"; and (3) "the total amount in controversy for Plaintiffs' claims under Labor Code § 226 [i.e., Plaintiffs' 'Illegal Records Subclass'] is $856,650." (Notice of Removal ¶¶ 32, 34, 35, ECF No. 1 (citing Burges Decl. ¶¶ 23, 28, 35, ECF No. 1-2)). Because it is necessary for this case to exceed the $5 million jurisdictional threshold in CAFA for removal to be proper, the Court will focus on Defendants' contention that there is "an amount in controversy of over $24,000,000 for Plaintiff Class I's overtime claim." *Id.* ¶ 32, ECF

---

[2] In his January 18, 2013 Interrogatory Responses, Plaintiff Karlbom stated that "my overtime rate will generally be my converted salary to an hourly rate with a 1.5x multiplier.... I reasonably estimate that in an average or typical workweek with the company, I worked approximately 55-60 hours per week, give or take." (Hill Decl., Ex. D, Karlbom Answer No. 4, ECF No. 5-3 at 21).

In his March 20, 2013 Interrogatory Responses, Plaintiff Pratko stated that "I reasonably estimate that in an average or typical workweek with the company, I worked approximately 60 hours per week, give or take. In order to give a better estimate, I would need [Defendants]' records which have been requested but not provided." (Hill Decl., Ex. E, Pratko Answer No. 4, ECF No. 5-3 at 26).

In Plaintiffs' depositions in June 2013, Plaintiffs estimated that they worked on average 50-60 hours per week. (Hill Decl., Exs. F & G, ECF No. 5-3 at 31-32, 36-37).

No. 1 (citing Burges Decl. ¶ 23, ECF No. 1-2).

Defendants calculate the $24,000,000 amount in controversy by extrapolating from question and answer number 20 of Plaintiff Karlbom's November 2013 interrogatory responses: "Please define how many hours of overtime per week constitutes 'regularly work overtime' as alleged in Paragraph 20 of your First Amended Class Action Complaint," which was answered, "I reasonably estimate 15 to 20 hours per workweek were in excess of 8 hours per day and/or 40 hours per week." (Wymer Decl., Ex. F, Karlbom Answer No. 20, ECF No. 9-3 at 118-19). Paragraph 20 of the First Amended Complaint alleges that "[d]uring the Class Period, the Defendants ... required Plaintiffs and Plaintiff Class members to regularly work overtime without lawful compensation, in violation of ... applicable Wage Orders, regulations and statutes...." (ECF No. 1-2 at 131). In the Notice of Removal, Defendants contend:

> Multiplying the conservative overtime pay rate for each putative class member times the lowest estimate of overtime hours worked on a weekly basis as attested to by Plaintiff Karlbom (15 hours), and then multiplying that number by the number of weeks each putative class member held an 'Infrastructure Associate' and/or 'Infrastructure Analyst' job code between March 16, 2005 and October 31, 2009, yields an amount in controversy of over $24,000,000 for Plaintiff Class I's overtime claim.

*Id.*

In his January 18, 2013 Interrogatory Responses and his June 28, 2013 deposition, Plaintiff Karlbom estimated that he worked between 55 to 60 hours per week during the relevant time period. (Hill Decl., Ex. D, Karlbom Answer No. 4, ECF No. 5-3 at 21; Hill Decl., Ex. G, ECF No. 5-3 at 36-37). This information, combined with the allegations of the First Amended Complaint (including Paragraph 20, quoted above, and Paragraph 28, alleging that "the claims of Plaintiffs Karlbom and Pratko for overtime wages ... are typical of all members of the Class"), supplied the same information as answer number 20 from Plaintiff Karlbom's November 2013 interrogatory responses. Accordingly, the Court finds that Plaintiffs' November 2013 interrogatory responses do not constitute an "other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. §

1446(b)(3). The Court finds that the Notice of Removal was not timely pursuant to 28 U.S.C. § 1446(b)(3).

### C. Amount in Controversy

"A district court has a duty to establish subject matter jurisdiction over the removed action sua sponte, whether the parties raised the issue or not." *United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 967 (9th Cir. 2004) (quotation omitted).[3] Diversity subject-matter jurisdiction under 28 U.S.C. § 1332(d), added by CAFA, provides the district court with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" the parties satisfy, among other requirements, minimal diversity. 28 U.S.C. § 1332(d)(2). "In cases removed from state court, the removing defendant has 'always' borne the burden of establishing federal jurisdiction, including any applicable amount in controversy requirement." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 682-83 (9th Cir. 2006) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). "A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). "Under this burden, the defendant must provide evidence that it is more likely than not that the amount in controversy satisfies the federal diversity jurisdictional amount requirement." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (quotation omitted). In addition to the contents of the removal petition, the court considers "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Abrego Abrego*, 443 F.3d at 690 (quotation omitted). A court "cannot base

---

[3] In the Notice of Removal, Defendants submitted evidence in support of its contention that the amount in controversy requirement has been satisfied. In the reply brief in support of the Motion for Remand, Plaintiffs contended that "Defendant has not provided evidence of a non-speculative amount in controversy sufficient to overcome the presumption against removal." (ECF No. 11 at 6). At oral argument, the parties further addressed the issue of whether the amount in controversy requirement was satisfied.

[its] jurisdiction on a [d]efendant's speculation and conjecture." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007), *abrogated on other grounds by Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013).

Defendants contend that "Plaintiffs' November 15, 2013 testimony that putative class members worked 15 to 20 hours of overtime per week allowed [Defendants] to calculate a minimum amount in controversy for [Plaintiffs' Class I] overtime claim of more than $24 million." (ECF No. 9 at 18). Defendants have failed to adequately demonstrate that Plaintiffs may competently testify as to the number of hours worked by each of the 318 individuals who comprise Plaintiff Class I in the First Amended Complaint. In the Notice of Removal and the Burges Declaration, Defendants offer no other evidentiary basis for their contention that *each* putative class member worked at least 15 hours of overtime during *each* of the weeks at issue.[4]

Courts have held that "[a] declaration stating the number of employees who worked for Defendant during the years prior to this action, together with assumptions about these employees, is not sufficient to establish that it is more likely than not that the amount in controversy in this case exceeds $5 Million." *Ornelas v. Children's Place Retail Stores, Inc.*, No. 13-02226-JAK, 2013 WL 2468388, at *4 (C.D. Cal. June 5, 2013); *see also Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1127-28 (C.D. Cal. 2010) ("When applying the preponderance of the evidence standard to California Labor Code claims, many California district courts have refused to credit damage calculations based on variables not clearly suggested by the complaint or supported by evidence,

---

[4] To the extent Defendants contend that Plaintiffs' November 15, 2013 interrogatory responses constitute *allegations*—rather than *evidence*—that each putative class member worked a similar amount of overtime each week as the named Plaintiffs, Defendants have failed to show that the November 15, 2013 interrogatory responses support Defendants' assumption that *each* putative class member in Class I is alleged to have worked at least 15 hours of overtime during *each* of the weeks at issue. Defendants also have failed to show that the November 15, 2013 interrogatory responses regarding the Class I overtime claims is materially different than what is alleged in Paragraphs 20 and 28 in the First Amended Complaint, as would be required to demonstrate that the Notice of Removal was timely, as discussed above. Finally, Defendants have failed to cite authority indicating that a plaintiff may amend the operative complaint via interrogatory responses.

concluding that the calculations are mere conjecture.") (collecting cases). "It is, of course, true that a removing defendant is not responsible for conducting a fact-specific inquiry into whether the rights of each and every potential class member were violated, answering the ultimate question the litigation presents, or trying the case itself for the purposes of establishing jurisdiction. Nonetheless, in evaluating whether a party has met its burden of proof with respect to jurisdiction, several circuits have held that it is proper for district courts to consider which party has access to or control over the records and information required to determine whether the amount in controversy requirement is met." *Roth*, 799 F. Supp. 2d at 1129-30 (collecting cases). In this case, Defendants are in the best position to produce evidence of the working hours and wages of their own employees. *See id.* at 1130 (same); *see also Ornelas*, 2013 WL 2468388, at *4 (same). The Court finds that Defendants have failed to satisfy their burden of showing by a preponderance of the evidence that the $5,000,000 amount in controversy requirement is met.

**IV.  Conclusion**

IT IS HEREBY ORDERED that the Motion for Remand is GRANTED. (ECF No. 5). Pursuant to 28 U.S.C. § 1447(c), this action is REMANDED to San Diego County Superior Court, where it was originally filed and assigned case number 37-2009-00085300-CU-OE-CTL.

DATED: April 17, 2014

**WILLIAM Q. HAYES**
United States District Judge